**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

GILEAD SCIENCES, INC. *et al.*,                          :
                                                                           :
                                        Plaintiffs,              :
                                                                           :
v.                                                                        :    Case No. 26-CV-2172 (CBA) (CHK)
                                                                           :
PAIN RELIEF RX, INC., *et al*.,                               :
                                        Defendants.           :
                                                                           :
                                                                           :
---------------------------------------------------------------

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**ORDER TO SHOW CAUSE FOR CONTEMPT SANCTIONS**
**AND AN ORDER TO COMPEL AGAINST**
**THE LEVY FAMILY DEFENDANTS**

Plaintiffs Gilead Sciences, Inc. and Gilead Sciences Ireland UC (together, "Gilead")

respectfully submit this memorandum of law in support of their Order to Show Cause why (1)

Contempt Sanctions should not be issued against Defendants Lumix Pharmacy Inc. ("Lumix")

and its principal Ariel Levy, and (2) why an order compelling the production of documents

should not be issued against Defendants Ariel Levy, Alex Levy, Daniel Levy, Susana Levy,

Benjamin Levy, David Levy, Marina Davidov, Zoya Meirov, Gerda Shimunova, Lumix, Galaxy

Pharmacy Inc., ClearRx Pharmacy Inc., Ez Max Pharmacy Inc., MDRx Pharmacy Inc., SkyRx

Pharmacy Inc., and Spectra Pharmacy Inc. (collectively the "Levy Family Defendants").

Gilead seeks this relief on an urgent basis through an Order to Show Cause because

Defendants are willfully withholding critical information – including the sources of their

counterfeit medicine – that is necessary to remove potentially dangerous counterfeit Gilead-

branded HIV medicine from the supply chain and shut down the distributors of these

counterfeits.  This Court's Seizure Order reflects the exigency of the situation, requiring the

"immediate[]" disclosure of information, including Lumix's source of Gilead-branded HIV

1

medications; the Expedited Discovery Order also requires documents concerning the counterfeiting be produced on a short timeframe. Yet based on the wholly uncredible assertion that they do not have any relevant information or a single responsive document, the Levy Family Defendants have refused to disclose the vital information required by the Seizure Order and have produced exactly nothing in response to Gilead's Requests for Production concerning their conduct. Gilead respectfully submits that under the circumstances, Gilead is entitled to urgent relief, and Gilead should not be required to proceed through the standard pre-motion process before filing a motion on notice.

This case is first and foremost about protecting vulnerable patients from the distribution of counterfeit HIV medications. Gilead has caught the Levy Family Defendants red-handed perpetrating a coordinated, multi-year, multi-pharmacy scheme to sell tens of millions of dollars' worth of counterfeit Gilead-branded HIV medicines to pharmacies throughout the country. In response, the Levy Family Defendants have taken a coordinated position: no talking, and no production. In their recently filed Answer, all of the individual Levy Family Defendants have invoked their Fifth Amendment rights, and all of the Levy Family Defendant entities flatly deny any knowledge or information, even on matters as basic as the counterfeit Gilead-branded HIV medicines that Lumix in fact sold to Gilead's cooperating pharmacist.

Most concerningly for present purposes, Lumix and its principal Ariel Levy are willfully flouting this Court's Seizure Order, which requires them to "immediately" provide information about their purchases and sales of the Gilead-branded HIV medicines at issue (including those sold to Gilead's cooperating pharmacist), so that Gilead can track down and stop the spread of these potentially dangerous counterfeits. And all of the Levy Family Defendants have taken the facially absurd position that they do not have a single document regarding their conduct to

2

produce in response to the Requests for Production that Gilead served under this Court's

Expedited Discovery Order, making the remarkable claim that there is not a single scrap of paper

or electronic message in their possession, custody, or control related to their five-year scheme to

sell counterfeit HIV medicine.  In its opening papers, Gilead introduced evidence that across six

pharmacies the Levy Family Defendants sold over 8,300 bottles of counterfeit Gilead-branded

medicine, and that is just from a time-limited set of data from a single online platform to which

Gilead happened to have access.  *See* Dkt. Nos. 5-16 to 5-21.  The notion that the Levy Family

Defendants – nine individuals and seven pharmacies – have access to zero documents concerning

their massive counterfeiting operations is farcical.

There is no mystery to the Levy Family Defendants' actions: they are treating this case as

though it were a criminal prosecution, asserting their Fifth Amendment rights, pleading

ignorance on the most basic of topics, and refusing to produce anything at all.  But this is a civil

litigation, not a criminal prosecution.  The individual Levy Family Defendants have the right to

invoke the Fifth Amendment and accept the civil consequences of doing so, but having

committed their counterfeiting through corporations, neither the individuals nor their entities can

refuse to produce the business records that relate to their scheme, either by asserting the Fifth or

by making patently preposterous assertions that they have not a single responsive document.

Given the serious risk to patient health posed by the Levy Family Defendants' scheme, Gilead

respectfully submits that this Court should send a very clear message that ignoring this Court's

orders and refusing to participate in discovery cannot and will not be tolerated.  The law is clear

that the appropriate penalty for civil litigants who refuse to participate in discovery is sanctions,

up to and including case-ending sanctions.  The Court should make it clear that is the path the

Levy Family Defendants are on, and provide them a window of opportunity – which should be

short, consistent with the Expedited Discovery Order and the public-health risk created by their counterfeit HIV medicines – to change their course.

**FACTUAL AND PROCEDURAL BACKGROUND**

### A.  The Seizure Order and Expedited Discovery Order

On April 17, 2026, this Court issued the Seizure Order (Dkt. No. 15), which in addition to allowing Gilead to seize products and documents at Lumix, requires Lumix to "immediately upon receipt of this Order" provide documents and information concerning the "purchases and/or sales of any product bearing any of the Gilead Marks from April 1, 2021 to the present: (1) the Drug Supply Chain Security Act pedigree documentation; (2) the price and quantity of each purchase or sale; (3) the product, including the specific type or variety of product; (4) the lot numbers; (5) the online marketplace, website, or platform, if any, on which the product was purchased or sold; and (6) the contact information, including names, addresses, email addresses, and telephone number of all associated individuals and/or companies from which Defendants have purchased or to whom Defendant sold the products …."  Seizure Order at 5-6.

On the same day, this Court also issued an Expedited Discovery Order (Dkt. No. 13), which permitted Gilead to "immediately serve discovery requests" on all Levy Family Defendants and required those defendants to produce "within seven calendar days after service of requests for production" documents and communications related to: "(i) Defendants' acquisition, purchase, sale, listing for sale, dispensation, advertising, distribution, transfer, payment for, or reimbursement claims for Gilead medicines or purported Gilead medicines; (ii) Defendants' processes, policies, or procedures concerning or applying to establishing the authenticity of any Gilead medicines or purported Gilead medicines; (iii) pedigree documentation and/or pedigree information concerning Gilead medicines or purported Gilead

4

medicines; (iv) membership in or use of online pharmacy-to-pharmacy marketplaces; (v) the operation of pharmacies, including but not limited to, licensure, sourcing of product, the opening and/or closing of physical locations, sources of revenue, insurance reimbursement claims, and dispensing products to patients; and (vi) Defendants' assets or transfer of assets, including the distribution of revenue or flow of funds received from sales of Gilead-branded medicine …." Expedited Discovery Order at 1-2.

### B.  The Levy Family Defendants' Known Sales of Gilead-Branded HIV Medicines

This Court issued the orders described above based on the evidence Gilead submitted in its motion papers, which demonstrated that the Levy Family Defendants have operated a series of fly-by-night pharmacies in the names of various family members, including the septuagenarian grandfather, Ariel Levy, and teenage grandson, David Levy, that illegally resell counterfeit and infringing Gilead-branded HIV medicines that had been previously dispensed to patients.  *See* Memorandum of Law in Support of Plaintiffs' Motion for *Ex Parte* Seizure Order ("Seizure MOL") Dkt. No. 3-1 at 26-38; Complaint (Dkt. No. 1) ¶¶ 104-134.  At the time of those filings, Gilead was aware of at least $26.6 million in sales of these counterfeit Gilead-branded HIV medicines by the Levy Family Defendants on online pharmacy-to-pharmacy marketplaces, representing thousands of units of Gilead-branded HIV medicine.  *See* Seizure MOL at 34 and Dkt Nos. 5-16 to 5-21; Compliant ¶¶ 123-34.  Each and every one of these thousands of units was sold by the Levy Family Defendants significantly below Gilead's own wholesale price – a fact that is only economically possible for counterfeit or otherwise illicit medicines.  *See* Seizure MOL at 35; Compliant ¶¶ 126-31.

Further, in the months leading up to April 2026, Gilead's cooperating pharmacist received four different bottles of Gilead-branded HIV medicine from Lumix through the online platform www.Rxeed.com.  Lumix sold each of these bottles below their list price, each was

missing patient and prescribing information included on genuine Gilead-branded HIV medicine, and each exhibited signs of previously having been dispensed to a patient. *See* Seizure MOL at 27-33; Compliant ¶¶ 106-19.

The Levy Family Defendants have denied none of this. On May 13, 2026, the Levy Family Defendants served their Answer (Dkt. No. 61). The Levy Family Defendants do not deny any of the substantive allegations against them. Instead, the individual Levy Family Defendants invoke "their rights against self-incrimination under the Fifth Amendment to the U.S. Constitution," and the entity Levy Family Defendants deny knowledge or information sufficient to form a belief as to every substantive allegation in the Complaint. Answer ¶¶ 123-34.

C. **Execution of the Seizure Order**

As Gilead noted in its moving papers for the Seizure Order, the evidence showed that Lumix's storefront was a scam – the pharmacy was never open, and its physical location existed merely to allow Lumix to maintain the false appearance of operating a retail pharmacy while it in fact sold large volumes of counterfeit HIV medicine online. *See* Seizure MOL at 27-33; Compliant ¶¶ 106-19. And though the Levy Family Defendants' *modus operandi* was to open pharmacies under different family member's names, use them to sell counterfeits online for six to eighteen months, and then shut them down, there is no dispute that Lumix was in fact "in operation" and selling medicines online when Gilead made its *ex parte* applications and executed this Court's Seizure Order.

The Seizure Order was executed on Tuesday, April 21, 2026, with the assistance of the New York County Sherrif's Office. Declaration of Isaac J. Weingram ("Weingram Declaration") ¶ 5. When Gilead's counsel and investigators arrived at Lumix at 8 am, the pharmacy was not open and the rollgate was down. *Id.* ¶¶ 6-7. After waiting some time to see if

anyone would open the pharmacy during normal business hours, counsel for Gilead contacted Ariel Levy, who came to Lumix and eventually opened the pharmacy, permitting Gilead to conduct the seizure. *Id.* ¶¶ 8-10. It was immediately clear that Gilead's moving papers were spot on: the pharmacy was almost completely empty, with no medication of any kind on the premises.



*Id.* ¶ 11. Except for some mail, the pharmacy contained only a handful of documents, none of which related to the pharmacy's purchase or sale of any medicines. *Id.*

### D. Service of the Orders and Requests for Production on the Levy Family Defendants

At the time of the seizure, Gilead served a complete set of papers on Ariel Levy, including the Seizure Order and the Expedited Discovery Order. *See* Marc Fishstein Affidavit of Service (Dkt. No. 40). On April 22 and 23, 2026, Gilead served the other individual members of the Levy Family Defendants. *See* Dkt. Nos. 36, 38. Further, after confirming when attempting service that the physical locations of the other pharmacies operated by the Levy Family Defendants had been shuttered, Gilead served the pharmacies through the New York Secretary of State on April 24, 2026. *See* Dkt. Nos. 39, 41.

On April 24, 2026, the Levy Family Defendants entered into a stipulation acknowledging and accepting service of all papers, including the Seizure Order, Expedited Discovery Order, and

Asset Freeze Order, agreeing to be preliminarily enjoined from "importing, purchasing, selling, distributing, marketing, or otherwise using in commerce in the United States any Gilead Products," confirming the seizure at Lumix, and consenting to the conversion of the Asset Freeze Order to a preliminary injunction.  *See* Dkt. No. 22.

On May 1, 2026, pursuant to the Expedited Discovery Order, Gilead served Requests for Production on the Levy Family Defendants.  Weingram Decl. ¶ 13.  Among other things, the requests sought (Weingram Decl. Ex. A):

- **Request for Production No. 6:**  All documents and communications concerning Your actual or potential procurement, purchase, offer for sale, sale, transfer, distribution, or advertising of Gilead-branded medicines by You and/or any Entity you own or have a beneficial interest in, manage, or control.  This includes but is not limited to all pedigree/T3 documents, emails, text messages or other electronic messages, purchase orders, invoices, memos, and internal documents related to Your handling of Gilead-branded medicines.

- **Request for Production No. 7:**  All communications with all companies and individuals involved with the purchase or sale of Gilead-branded medicines to You or on Your behalf.

- **Request for Production No. 8:**  All documents and communications concerning offers to purchase Gilead-branded medicines whether or not such purchases were consummated.

- **Request for Production No. 9:**  All documents and communications concerning pedigree documentation or "T3" documentation for Gilead-branded medicines, including any T3/pedigree/DSCSA documentation accompanying any Gilead-branded medicine that You purchased, distributed, and/or sold from January 1, 2020 to the Present.

- **Request for Production No. 10:**  All documents concerning the payment of funds by You for the purchase of Gilead-branded medicines, including all wire transfer records, checks, and/or bank statements.

- **Request for Production No. 11:**  All documents sufficient to show the disposition of any funds You received in connection with the procurement, purchase, or sale of any Gilead-branded medicines, including all wire transfer records, checks, or bank statements.

- **Request for Production No. 14:** All documents and communications concerning Your membership in online pharmaceutical marketplaces, including but not limited to the Entities listed in Schedule A.

- **Request for Production No. 24:** All documents and communications concerning previously-dispensed or re-dispensed bottles of Gilead-branded medicine, including but not limited to documents and communications concerning the repurchase of Gilead-branded medicine from patients.

Pursuant to the Expedited Discovery Order, responses to Gilead's Requests for Production were due on May 8, 2026. *See* Expedited Discovery Order at 13 (requiring production within seven days).

### E. The Levy Family Defendants Fail to Comply with the Court Orders and Fail to Produce Documents in Response to Gilead's Requests for Production

On May 7, the evening before the Levy Family Defendants' responses to Gilead's Requests for Production were due, Gilead to provide an extension for those responses until Monday, May 11. Weingram Decl. ¶ 14.

Also on May 7, Gilead's counsel also reiterated – as Gilead's counsel had done before, repeatedly – that the Levy Family Defendants had been ordered by this Court to "immediately" provide information about Lumix's purchase and sale of Gilead-branded HIV medicines under the Seizure Order. Weingram Decl. ¶¶ 17-18. In the May 7 conversation, Gilead emphasized the risk to patient health and safety at issue, and warned that if the information required by the Seizure Order were not also produced by May 11, Gilead intended to file a motion for contempt. *Id.*

On May 11, the Levy Family Defendants produced their written responses to Gilead's Requests for Production. Weingram Decl. Ex. B. They did not provide any of the information required to be produced under the Seizure Order, and the Levy Family Defendants did not produce any documents in response to Gilead's Requests for Production. In their written responses, the Levy Family Defendants admitted they operated Lumix from "January 1, 2025

9

through April 2026" – i.e., through the execution of the Seizure Order on April 21. *Id.* at 3. But with respect to nearly all the requests, including all the requests enumerated above, *see supra* at 8-9, the Levy Family Defendants asserted that they were "not presently in possession of documents responsive to this Request." Weingram Decl. Ex. B at 3-6.

Gilead held a meet-and-confer call the following day, May 12. Weingram Decl. ¶ 15, 19. During the conferral, counsel for the Levy Family Defendants indicated that her clients had informed her that they kept no paper or electronic records from the operation of the pharmacies: no invoices, no text messages, no emails, and that when they shut down a pharmacy they also shut down the associated email account. *Id.* Gilead stated that it was (to put it mildly) not credible that none of the Levy Family Defendants had in their possession, custody, or control a single relevant document after running numerous pharmacies for years and selling tens of millions of dollars' worth of Gilead-branded HIV medicines – and doing so through online platform that necessarily require the use of electronic communications. *Id.* The Levy Family Defendants nevertheless maintained their position that they have absolutely no responsive documents to produce. As of the date of this filing, other than limited financial disclosures, the Levy Family Defendants have not produced any documents in response to Gilead's Requests for Production and have produced none of the information required under the Seizure Order.

## ARGUMENT

Lumix and its principal Ariel Levy are in brazen, willful contempt of the Seizure Order. Contempt sanctions are warranted, and they should be admonished that continued violation of the Seizure Order will result in further sanctions up to and including the entry of a default judgment against them. In the event Ariel Levy or any other representative of Lumix asserts it is

10

impossible to comply with the Seizure Order because the documents are not available, they should be required to explain how that could possibly be under oath in front of the Court.

In addition, each and every Levy Family Defendant should be compelled to produce documents in response to Gilead's Requests for Production.

**A. The Court Should Hold Lumix and Ariel Levy in Contempt of the Seizure Order**

The Court may issue sanctions "when the party against whom sanctions are sought has failed to comply with a court order to provide discovery." *Izzo v. ING Life Ins. & Annuity Co.*, 235 F.R.D. 177, 185 (E.D.N.Y. 2005) (internal quotation marks and citation omitted). Rule 37 provides the Court a panoply of sanctions up to and including "rendering a default judgment against a disobedient party" and "treating as contempt of court the failure to obey any order except an order to submit to physical or mental examination." Fed. R. Civ. P. 37(b)(2)(A). In this instance, where Lumix and Ariel Levy have failed to comply with the disclosure requirements of the Seizure Order despite repeated requests from Gilead, it would be appropriate to find Lumix and Ariel Levy in contempt, order them to pay Gilead's attorneys' fees and costs associated with bringing this motion, and warn them that continued failure to comply with the Seizure Order will result in entry of a default judgment against them.

"Sanctions under Rule 37 are intended to serve three purposes: '[f]irst, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation ....'" *Izzo*, 235 F.R.D. at 185–86 (quoting *Update Art, Inc. v. Modiin Publishing, Ltd.*, 843 F.2d 67, 71 (2d Cir.1988)). All those rationales are animated here, particularly in light of the Levy Family Defendants' assertion that none of them have any relevant documents at all. Sanctions are therefore warranted.

11

"The 'mildest' sanction 'is an order to reimburse the opposing party for expenses caused by the failure to cooperate.'" *Seena Int'l, Inc. v. One Step Up, Ltd.*, No. 15CV01095PKCBCM, 2016 WL 2865350, at *11 (S.D.N.Y. May 11, 2016) (quoting *Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir.1979)); *see also Izzo*, 235 F.R.D. at 188 ("[T]he imposition of reasonable expenses is mandatory, unless the record establishes either that the failure to obey the Court order was substantially justified or that other circumstances make an award of expenses unjust") (quoting *Stanziale v. First Nat'l City Bank*, 74 F.R.D. 557, 560 (S.D.N.Y. 1977)).  But other sanctions are also available at the Court's discretion.  For example, "[a]lthough preclusion of evidence and dismissal of the action are harsh remedies and should be imposed only in rare situations, they are necessary" in appropriate instances "to achieve the purpose of Rule 37 as a credible deterrent rather than a paper tiger." *Update Art*, 843 F.2d at 71 (cleaned up).

Here, there can be no doubt that Lumix and Ariel Levy have responsive corporate records in their possession, custody, and/or control, and that they are willfully refusing to provide the information required under the Seizure Order regarding Lumix's purchases and sales of Gilead-branded medicines.  Gilead sought, and this Court ordered, that information be produced "immediately" because that information is vital to determining the source of counterfeit HIV medicines and to removing them from the supply chain.

The argument that Lumix and Ariel Levy have no information regarding the Gilead-branded medicines that Lumix bought and sold online is so frivolous as to be insulting to the authority of this Court.  As Ariel Levy verified as part of the Levy Family Defendants' response to Gilead's Requests for Production, Lumix was an operating pharmacy (even though its storefront was a sham) up until the day the Seizure Order was executed.  Weingram Decl. Ex. B

12

at 3, 7.  Ariel Levy in fact showed up at the seizure and opened Lumix's doors.  Weingram Decl. ¶¶ 9-11.  Further, Lumix is a licensed pharmacy engaged in the highly regulated business of selling prescription medicines.  It is required by federal law to maintain its records of purchases and sales of prescription medicines for at least six years.  *See, e.g.*, 21 U.S.C. § 360eee-1(d)(1)(A)(iii).  The notion that Lumix and Ariel Levy have *no* access to *any* documents about *anything* having to do with Lumix's sales of Gilead-branded medicines is absurd.  The only way that could possibly be true is if Lumix and Ariel Levy immediately and deliberately destroyed all relevant documents after the seizure, which of course would be an additional flagrant violation of the Seizure Order.

But even if one were to hypothetically accept a universe where a licensed pharmacy sold large volumes of HIV medicine through third-party online pharmacy-to-pharmacy platforms, and somehow the pharmacy and its sole owner had no documents or communications regarding those sales in their possession, custody, or control, Lumix and Ariel Levy would still be in contempt.  The Seizure Order requires them to produce information, not just documents, about Lumix's sales of Gilead-branded medicines.  The millions of dollars' worth of counterfeit Gilead-branded HIV medicines that Lumix sold online did not magically appear out of thin air.  Lumix and Ariel Levy know the source from which they acquired those counterfeits, and this Court has ordered them to disclose it.  Their refusal to provide information about these sources is a textbook example of willful contempt.

Although severe sanctions would be appropriate, Gilead's principal interest at this time is in receiving information that will allow it to stop the spread of potentially dangerous counterfeit HIV medicine.  Accordingly, Gilead respectfully seeks that the Court issue the mildest possible sanctions: a finding of contempt, sanctions in the form of an order to pay Gilead's costs and fees

13

associated with bringing the instant motion, and an order that Lumix and Ariel Levy provide the information set forth in Seizure Order within three days. Gilead hopes that such an outcome will spur the Levy Family Defendants to take seriously this Court's orders and their own discovery responsibilities. But the Court should also expressly warn the Levy Family Defendants that if they fail to course-correct and continue their willful contempt, they may be subject with increased sanctions, including case-ending sanctions. Lumix and Ariel Levy must be made to understand that if they are going to appear and defend this lawsuit, they must comply with this Court's orders.

Finally, if Ariel Levy and Lumix make the same assertions to this Court that they made in meet-and-confer discussions – i.e., that they cannot comply with the Seizure Order because they have no documents or information within their possession, custody, or control – the Court should compel Ariel Levy to appear before the Court and explain, under penalty of perjury, how that could possibly be the case.

### B. The Court Should Compel the Levy Family Defendants to Produce Documents in Response to Gilead's Requests for Production

In addition to imposing sanctions and giving Lumix and Ariel Levy a three-day window to cure their contempt of the Seizure Order, the Court should also issue an order compelling all the Levy Family Defendants to produce documents responsive to Gilead's Requests for Production.

The Levy Family Defendants' blanket assertion that they – seven pharmacies and the nine individuals that ran them – have *no* responsive documents concerning *any* of their years-long sales of counterfeit Gilead-branded medicines online is as transparently false as Lumix and Ariel Levy's asserted inability to produce the documents and information about where they sourced the counterfeits they sold as required under the Seizure Order. If civil defendants could

14

simply assert, no matter how implausibly, that they have no documents at all and therefore are immune from document discovery, then civil litigation as we know it would grind to a halt.

Although the Levy Family Defendants' obviously false written responses to Gilead's Requests for Production and willful refusal to produce documents are an obvious fraud upon this Court, that does not (yet) constitute a violation of a Court order. Gilead therefore respectfully requests that the Court order the Levy Family Defendants to revise their written responses, conduct a thorough, counsel-led, good-faith search for responsive documents in their possession, custody, or control, and produce all such documents within 7 days of the Court's order. The Court should also warn all the Levy Family Defendants that failure to comply with the Court's order in good faith may lead to the imposition of sanctions, up to and including case-ending sanctions.

### C. The Levy Family Defendants' Assertion of Their Fifth Amendment Rights in Their Answer Cannot be Used to Oppose This Motion or Excuse Their Recalcitrance

Although the Levy Family Defendants have not expressly refused to produce documents by invoking the Fifth Amendment, to the extent they do so in their opposition, the individual Levy Family Defendants cannot excuse their failure to produce the requested corporate documents and information under the Fifth Amendment. Under certain circumstances, natural persons may resist the production of personal documents under the Fifth Amendment pursuant to the so-called act-of-production privilege. *See e.g.*, *Braswell v. United States*, 487 U.S. 99 (1988). But the act-of-production privilege does not apply to corporate records, and "a corporate custodian ... may not resist a subpoena for corporate records on Fifth Amendment grounds." *Braswell*, 487 U.S. at 108-09. "Because the Fifth Amendment privilege protects only natural persons, collective entities such as corporations or partnerships may not invoke it to evade document requests. Nor may an individual custodian holding a collective entity's records in a

15

representative capacity refuse to produce documents." *United States v. Fridman*, 974 F.3d 163, 180 (2d Cir. 2020) (citations omitted) (citing, *inter alia*, *Braswell*, 487 U.S. at 102, 104-08); *see also Armstrong v. Guccione*, 470 F.3d 89, 97-100 (2d Cir. 2006) ("In *Braswell v. United States*, the Supreme Court held that a corporate custodian could not invoke the Fifth Amendment as a basis for refusing to produce corporate records, even though the act of producing those records has independent testimonial significance, which might incriminate the custodian personally.").

Under *Braswell* and its progeny, it is immaterial whether the custodian of corporate records happens to be the sole owner and principal of the corporation. Even in the case of "one-person corporations," the Fifth Amendment does not apply, and the custodian must produce the corporate documents, even if those corporate records implicate the custodian personally in a crime. *See Fridman*, 974 F.3d at 181.

Accordingly, none of the Levy Family Defendants, including natural persons, can resist the production of documents or information regarding the pharmacies' trafficking in counterfeit Gilead-branded HIV medicines by invoking the Fifth Amendment. Having chosen to purchase and sell counterfeits through licensed pharmacies, they must produce the corporate records regarding those purchases and sales.

## **CONCLUSION**

For the reasons stated above, the Court should find that Lumix and Ariel Levy are in contempt, should award Gilead its costs and attorneys' fees associated with bringing this motion, and should warn Lumix and Ariel Levy that additional sanctions, including case-ending sanctions, will be awarded, if they fail to comply with their disclosure obligations under the Seizure Order within three days of the Court issuing its contempt finding. Further, the Court should order all of the Levy Family Defendants to, within seven days of its order, revise their

16

written responses to Gilead's Requests for Production and produce all responsive documents in any of their possession, custody, or control after conducting a thorough, good-faith, counsel-led search.

Dated: May 18, 2026

Respectfully Submitted,

_____
Geoffrey Potter
Timothy A. Waters
Isaac J. Weingram
Caroline Zielinski
Anna Petrocelli
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY 10036-6710
Tel:    (212) 336-2000
Fax:    (212) 336-2222
gpotter@pbwt.com
twaters@pbwt.com
iweingram@pbwt.com
czielinski@pbwt.com
apetrocelli@pbwt.com

*Counsel for Plaintiffs Gilead Sciences, Inc. and Gilead Sciences Ireland UC*

17

## CERTIFICATION OF WORD COUNT COMPLIANCE

I hereby certify pursuant to Local Civil Rule 7.1(c) that the foregoing Memorandum of Law contains 4,815 words (excluding the caption and signature block), and that I have relied upon Microsoft Word's word count for purposes of this certification.

Isaac J. Weingram