UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GILEAD SCIENCES, INC. and
GILEAD SCIENCES IRELAND UC,
        Plaintiffs,

                        -against-                                    Case No. 26 Cv. 2172 (CBA)(CHK)


PAIN RELIEF RX, INC., et al.,
        Defendant/Movant.
-------------------------------------------------------------------X

### MEMORANDUM OF LAW OF THE LEVY FAMILY DEFENDANTS
### IN OPPOSITION TO PLAINTIFFS' ORDER TO SHOW CAUSE
### FOR CONTEMPT SANCTIONS AND TO COMPEL

### PRELIMINARY STATEMENT

Alex Levy, Ariel Levy, Benjamin Levy, Daniel Levy, David Levy, Susana Levy, Marina Davidov, Zoya Meirov, Gerda Shimunova, and Lumix Pharmacy Inc. (hereafter "the Levy Family Defendants") respectfully submit this memorandum in opposition to Plaintiffs' Order to Show Cause (ECF 67), which seeks (i) civil contempt sanctions against Lumix Pharmacy Inc. and Ariel Levy, and (ii) an order compelling production against, *inter alia*, the Levy Family Defendants. The hearing on the motion is set for June 9, 2026.

Plaintiffs' motion founders on a contradiction of their own making. Their Complaint and motion papers brand the Levy Family Defendants as participants in a years-long criminal enterprise to traffic in counterfeit medicine, and they affirmatively place the individual defendants' supposed criminal histories at the center of this case. Having cast the conduct in precisely those terms, Plaintiffs cannot now be heard to cry foul when the individual defendants exercise the very privilege their accusations trigger.

The Fifth Amendment plainly attaches here—Plaintiffs' own pleadings establish the "substantial and real" hazard of incrimination that the privilege requires. The only genuine question is the *scope* of that protection, and on that question the law favors the defendants. The drastic relief Plaintiffs invoke—contempt and the specter of case-ending sanctions—is a remedy of last resort, not a device for punishing the assertion of a constitutional right. The defendants are prepared to provide the information the Seizure Order requires and to produce responsive corporate records on a reasonable schedule, and ample time remains before the June 9 hearing for the Court to set one. The motion should be denied, or at most resolved through a reasonable, court-supervised compliance schedule.

Three points frame the defense.

*First*, civil contempt is coercive and remedial, not punitive; where a party is willing and able to comply, the purpose of contempt is satisfied without sanctions.

*Second*, the corporate defendants' entity records will be produced—a collective entity does not, and cannot, assert a Fifth Amendment privilege against producing business records—so the defendants will produce them rather than rest on a blanket objection.

*Third*, the individual defendants' Fifth Amendment invocations are their constitutional right; the privilege Plaintiffs' own allegations trigger protects not only direct admissions but testimonial communications such as emails and text messages that could supply a link in the chain of evidence, carries at most a permissible adverse inference, and is no basis for sanctions—even as it does not relieve the entities of their obligation to produce corporate records.

# BACKGROUND

**The orders.** On April 17, 2026, the Court entered a Seizure Order (ECF 15) requiring Lumix to disclose specified information about its purchases and sales of Gilead-branded products, and an Expedited Discovery Order (ECF13). Plaintiffs served Requests for Production on May 1, 2026.

**Prior responses.** On May 11, 2026, co-counsel served written responses; the individual defendants invoked the Fifth Amendment and the entities responded that they were not then in possession of responsive documents. Plaintiffs filed the present motion on May 18, 2026.

**Current posture.** The defendants are gathering and preserving responsive materials and are prepared to provide the Seizure-Order information and to produce responsive corporate records on a schedule the Court may set. The hearing on the motion is scheduled for June 9, 2026.

# ARGUMENT

I. **THE REQUEST FOR CONTEMPT SANCTIONS AGAINST ARIEL LEVY SHOULD BE DENIED OR HELD IN ABEYANCE PENDING COMPLIANCE.**

A. <u>Civil contempt is an extraordinary, coercive remedy reserved for clear and willful disobedience.</u>

A movant seeking civil contempt must establish, by clear and convincing evidence, that (1) the order violated was clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the alleged contemnor has not diligently attempted to comply in a reasonable manner. *See King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1058 (2d Cir. 1995); *Latino Officers Ass'n v. City of New York,* 558 F.3d 159, 164 (2d Cir. 2009). Civil contempt sanctions serve only to coerce compliance or compensate the movant; they are not punitive. *See Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.,* 369 F.3d 645, 657-58 (2d

Cir. 2004). Where compliance is forthcoming, the coercive purpose of contempt is met without the need for sanctions.

B. <u>There is no willful, contumacious refusal: the defendants are prepared to comply on a reasonable schedule, and ample time remains before the June 9 hearing.</u>

The element of diligent, good-faith effort is assessed as of the time of the Court's determination, not frozen at the date of Plaintiffs' motion. The defendants are presently assembling the information the Seizure Order requires and are prepared to provide it on the timetable the Court directs; with the hearing set for June 9, 2026, ample time remains for orderly compliance. A party that is willing and able to comply—and is doing so—is not engaged in the contumacious defiance that civil contempt exists to coerce. The Court should deny the contempt request or, at minimum, hold it in abeyance and set a compliance schedule, including the short cure period Plaintiffs themselves proposed (ECF 67-1), with leave to renew only if compliance is not forthcoming.

C. <u>To the extent particular records are genuinely unavailable, the defendants will so demonstrate; inability to comply is a defense to contempt.</u>

A party's present inability to comply, established in good faith, is a defense to civil contempt. *See United States v. Rylander,* 460 U.S. 752, 757 (1983). To the extent the Seizure Order is read to require documents that are not within a defendant's possession, custody, or control, Ariel Levy is prepared to attest to that fact and to the basis for it. The defendants recognize, however, that the Seizure Order calls for *information* as well as documents, and Lumix will provide responsive information within the knowledge of its custodian. The defendants are separately ensuring that all potentially responsive materials are preserved going forward.

One qualification bears noting. To the extent the Seizure Order compels Ariel Levy to make *personal, testimonial* disclosures—for example, identifying from his own knowledge the individuals or sources from whom product was obtained—that compelled information implicates

4

his personal Fifth Amendment privilege, which (as shown below) protects testimonial disclosures that could furnish a link in the chain of evidence. The defendants are not invoking that privilege to refuse the Court's directive. Rather, should the Court compel such personal testimonial information over a privilege assertion, the appropriate course is to do so with use and derivative-use protection, so that the compelled information—and anything derived from it—may not be used against him in a criminal case. *See* 18 U.S.C. § 6002; *see also Kastigar v. United States,* 406 U.S. 441, 453 (1972). That mechanism reconciles the Court's interest in disclosure with the defendant's constitutional rights and further demonstrates that contempt is unnecessary to achieve compliance.

D.  Sanctions, including any fee award, are unwarranted at this juncture.

Because the defendants are prepared to comply and are doing so, no sanction is necessary to coerce compliance, and a fee award would be neither coercive nor compensatory of any avoidable harm. Any sanctions question should abide the defendants' compliance.

## II.  THE MOTION TO COMPEL SHOULD BE DENIED AS MOOT OR RESOLVED THROUGH A REASONABLE PRODUCTION SCHEDULE.

A.  The corporate defendants will produce responsive business records, subject to the act-of-production protection that the law affords their custodians.

The seven pharmacy defendants are corporations. It is settled that a collective entity has no privilege against self-incrimination and must produce its records through a custodian, even where production may be personally incriminating to the custodian. *See Braswell v. United States,* 487 U.S. 99, 108-13 (1988); *Bellis v. United States,* 417 U.S. 85, 89-90 (1974); *Armstrong v. Guccione,* 470 F.3d 89, 98-100 (2d Cir. 2006). That rule applies regardless of the entity's size, including closely held and even one-person corporations. *See In re Grand Jury Subpoena Issued June 18, 2009 (Account Servs. Corp.),* 593 F.3d 155, 157-59 (2d Cir. 2010); *SEC v. Ryan,* 747 F. Supp. 2d 355, 366-67 (N.D.N.Y. 2010). The Levy Family Defendants do not dispute this. Consistent with

that obligation, the defendants are conducting a documented search and will produce responsive, non-privileged corporate records—including available financial, marketplace-account, and pedigree/T3 materials—on a rolling basis. A blanket assertion that no records exist will be superseded by that production.

In exchange for that compliance, the defendants ask only that the Court confirm what the law already provides: because each custodian produces in a representative rather than a personal capacity, the custodian's *act* of production—the implicit acknowledgment of the records' existence, possession, and authenticity—may not be used as evidence against that individual in any later criminal proceeding. *See Braswell,* 487 U.S. at 117-18; *Armstrong,* 470 F.3d at 99-100. Recognizing that protection costs Plaintiffs nothing, removes any pretext for noncompliance, and allows production to proceed without prejudicing the individuals' rights.

B. <u>Plaintiffs' own allegations of criminal conduct establish that the privilege attaches; the only question is its scope.</u>

Plaintiffs have spent this litigation insisting that the Levy Family Defendants are running a criminal enterprise—trafficking in counterfeit medicine across a "rotating series" of pharmacies—and have affirmatively injected the individual defendants' alleged prior criminal convictions into the record. Those allegations are Plaintiffs' own, and they are dispositive of the threshold privilege question. The Fifth Amendment may be invoked wherever the witness has "reasonable cause to apprehend danger" that a compelled disclosure could be used in a criminal prosecution or could lead to evidence that might be—a hazard that need only be "substantial and real, and not merely trifling or imaginary." *United States v. Zappola,* 646 F.2d 48, 53 (2d Cir. 1981); *see Hoffman v. United States,* 341 U.S. 479, 486 (1951); *accord Capdeboscq v. Francis,* 98 F. App'x 988 (5th Cir. 2004). A plaintiff who repeatedly characterizes a defendant's conduct as criminal has, by its own hand, established that hazard. Plaintiffs cannot brand the defendants

criminals to win their claims and simultaneously deny them the constitutional protection that designation carries. The privilege attaches. The contested question is therefore not *whether* the individual defendants may invoke the Fifth Amendment, but the *scope* of the protection—the subject of the subsections that follow.

C. <u>The privilege protects testimonial communications—including emails and text messages—that could supply a link in the chain of evidence.</u>

The Fifth Amendment privilege applies fully in civil proceedings. *See Baxter v. Palmigiano,* 425 U.S. 308, 316 (1976). In this Circuit, a protected communication need only be "testimonial, incriminating, and compelled," and the privilege is not confined to directly inculpatory admissions: it reaches any disclosure that "would furnish a link in the chain of evidence needed to prosecute the claimant." *United States v. Greenfield,* 831 F.3d 106, 113, 116 (2d Cir. 2016); *see Hoffman v. United States,* 341 U.S. 479, 486 (1951); *accord Doe v. Glanzer,* 232 F.3d 1258, 1263 (9th Cir. 2000). Whether the communication is oral or written is immaterial—the privilege turns on compulsion and testimonial content, not the medium—so it protects testimonial emails, text messages, and other written disclosures that could supply such a link. *See Greenfield,* 831 F.3d at 113; *United States v. Fox,* 721 F.2d 32, 38 (2d Cir. 1983); *Adelphia Recovery Trust v. Bank of Am., N.A.,* 2009 U.S. Dist. LEXIS 109677 (S.D.N.Y. 2009). The hazard must be "substantial and real, and not merely trifling or imaginary," and the privilege is asserted on a question-by-question basis rather than by blanket refusal. *United States v. Zappola,* 646 F.2d 48, 53 (2d Cir. 1981); *accord Capdeboscq v. Francis,* 98 F. App'x 988 (5th Cir. 2004). Given the allegations in this case and the prior history Plaintiffs themselves have placed at issue, the individual defendants' invocations are well-founded, and the Court cannot compel them to give testimony—or to make testimonial disclosures through their personal communications—that would carry such a hazard.

7

D. <u>The act of producing an individual's personal documents is itself testimonial and protected absent a "foregone conclusion."</u>

Beyond the contents of any communication, the *act* of producing documents can be independently privileged where it would tacitly concede the existence, the defendant's possession or control, or the authenticity of the materials. *See Fisher v. United States,* 425 U.S. 391, 410 (1976); *United States v. Hubbell,* 530 U.S. 27, 36-37 (2000); *United States v. Greenfield,* 831 F.3d 106, 115-16 (2d Cir. 2016). That privilege yields only where the requesting party shows, "with reasonable particularity," that it already knows of the existence and location of the documents, such that production adds little or nothing to its case—the "foregone conclusion" exception. *In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992,* 1 F.3d 87, 93 (2d Cir. 1993); *see Fisher,* 425 U.S. at 411.

Where that showing cannot be made—as in *Greenfield,* where a twelve-year gap defeated any inference of continued possession—the act-of-production privilege bars compulsion. 831 F.3d at 116-17. To the extent Plaintiffs seek to compel individual defendants to produce personal records or communications, those protections apply and must be evaluated request-by-request—a further reason the blunderbuss relief Plaintiffs seek is inappropriate. This privilege does not, however, attach to the production of corporate records by an entity's custodian, *see Braswell, supra; Account Servs. Corp. (In re Grand Jury Subpoena Issued June 18, 2009),* 593 F.3d 155, 158 (2d Cir. 2010), and the entities will produce as set forth above.

E. <u>An adverse inference is the outer limit of any consequence, and it cannot, standing alone, support the relief Plaintiffs seek.</u>

In a civil case, the consequence of a valid Fifth Amendment invocation is that the factfinder *may* draw an adverse inference; it is not contempt, and it is not a basis for sanctions. *See Baxter,* 425 U.S. at 318; *LiButti v. United States,* 107 F.3d 110 (2d Cir. 1997); *cf. Louis Vuitton Malletier*

*S.A. v. LY USA, Inc.,* 676 F.3d 83 (2d Cir. 2012). And in this Circuit such an inference is permissive, not mandatory: it must be weighed against the rest of the record and may not, standing alone, carry a party's burden. *See LiButti,* 107 F.3d at 120-24; *accord Pagel, Inc. v. SEC,* 803 F.2d 942, 947 (8th Cir. 1986) (adverse inference "cannot be the sole basis" for an adverse determination). Two further limits matter here. First, one defendant's invocation may not be reflexively charged against another: whether a co-party's or non-party's silence yields an inference against a given defendant turns on the multi-factor inquiry of *LiButti*—the nature of the relationship, the invoking party's control or stake in the litigation, the compatibility of their interests, and the role of the silent witness. 107 F.3d at 123-24. In a case built on family relationships, that is a fact-specific question that cannot be resolved by the present motion. Second, at trial any invocation reaches the factfinder only as filtered through Federal Rules of Evidence 401 and 403, with the Court controlling its form to avoid unfair prejudice. *See Mirlis v. Greer,* 952 F.3d 36, 44-46 (2d Cir. 2020). Plaintiffs may, at the appropriate stage, ask the factfinder to draw inferences; they may not convert the defendants' exercise of a constitutional right into contempt or case-ending sanctions now.

F. <u>A proportional, court-supervised schedule is the appropriate remedy.</u>

Given the breadth of Plaintiffs' requests, the appropriate course is a reasonable production schedule rather than sanctions. The defendants respectfully request that the Court set a rolling production schedule and, if helpful, a status conference in advance of or at the June 9 hearing, in lieu of the relief Plaintiffs seek.

**CONCLUSION**

For the foregoing reasons, the Levy Family Defendants respectfully request that the Court deny Plaintiffs' Order to Show Cause, or in the alternative hold the motion in abeyance and enter a reasonable schedule for the defendants to provide the information required by the Seizure Order and to produce responsive corporate records, together with such other relief as the Court deems just and proper.

Dated: Bayside, New York
June 3, 2026

Respectfully submitted,

Steve Zissou, Esq.
Steve Zissou & Associates
*Attorney for Defendants*
42-40 Bell Boulevard
Suite 302
Bayside, New York 11361
(718) 279-4500

SZ/jc