**Steve Zissou & Associates**

42-40 Bell Boulevard | Suite 302 | Bayside | New York | 11361 | 718.279.4500 | stevezissou@stevezissouesq.com

September 14, 2026

**BY EMAIL**

The Honorable Carol Bagley Amon
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Gilead Sciences, Inc. et al. v. Pain Relief Rx, Inc. et al.*,
Case No. 26 Cv. 2172 (CBA)(CHK)

Your Honor,

We represent the sixteen Levy Family Defendants and write, pursuant to Rule 3(A) of Your Honor's Individual Rules, in response to Plaintiffs' letter seeking a pre-motion conference on an anticipated motion for case-terminating sanctions against all sixteen. ECF 118. The Levy Family Defendants respectfully submit that the motion Plaintiffs describe cannot be granted on the record they describe, that the record itself is materially different from Plaintiffs' account of it, and that the Court's and the parties' resources are better spent on the question that will actually decide this case—the measure of recovery against assets already restrained several times over—than on a default judgment against fourteen defendants for the deleted account of one.

1. The record is not what ECF 118 says it is.

Plaintiffs write that Lumix "was forced to admit that it had permanently deleted all the contents" of its email account, citing ECF 104 at 6. ECF 118 at 2. That page—the Levy Family Defendants' section of the joint letter of June 18, 2026—says the account was "as a practical matter, inaccessible" and that counsel would not represent to the Court what counsel did not know; the "deleted and unrecoverable" language is Plaintiffs' own, on page 2. The record has since been supplied by a third party. On September 10, 2026, in response to Plaintiffs' June 18 subpoena, Google LLC produced certified subscriber records for lumixpharmacy1@gmail.com showing the account's status as "Deleted" and a deletion date of April 27, 2026 (02:35 UTC). The Levy Family Defendants do not dispute Google's records. What they establish is the date and manner of the loss of one account, belonging to one defendant, within a week of the execution of the Seizure Order at Lumix on April 21. Mr. Levy has invoked, in writing, on the circumstances. That is the record, and it concerns Lumix.

Plaintiffs also describe the defendants' productions as "a demonstrably incomplete set of automatically generated emails." Those emails are the pharmacies' sales records—the Rxeed order confirmations for every marketplace transaction the pharmacies' accounts contain. Since the June 18 letter, and under the counsel-supervised review described there and at the June 23 conference,

the Levy Family Defendants have produced approximately 13,800 Bates-stamped pages for six pharmacies (Galaxy, 7,810; ClearRx, 2,189; SkyRx, 2,004; EZ Max, 1,536; MDRx, 178; Spectra, 25), each with a cover letter indexing the production to Plaintiffs' requests, a privilege and redaction log, and an affirmative statement of the categories in which nothing was located; Lumix's corporate, licensing and pharmacist records; and interrogatory responses for all sixteen defendants.

Counsel, together with his paralegal, brought each individually named defendant to counsel's office and accessed their email accounts and messaging accounts both on their laptops and on their mobile phones. Counsel attempted to log into sales platforms—e.g., Rxeed—and, finding that the accounts had been apparently shut down, made sure to include "Rxeed" in word searches in each defendant's email account. Indeed, in email and chat apps, counsel performed word searches for, *inter alia*, pharmacy names, drug names, product codes, and pharmacy platform names. Counsel also reviewed, and provided, physical corporate records as well as photographs recovered. Plaintiffs' counsel told Judge Kaminsky on June 23, 2026, that this material "is obviously relevant to our allegations" and "a start." Tr. 3:22–4:1. It is more than a start: Plaintiffs' own July 21 spreadsheet of the pharmacies' Rxeed sales reconciles to those productions, order by order, within one percent.

2. <u>Rule 37(e) does not reach fourteen of the sixteen defendants on this record</u>.

Rule 37(e) applies only to electronically stored information that "should have been preserved in the anticipation or conduct of litigation" and was lost "because a party failed to take reasonable steps to preserve it," and the terminating measures Plaintiffs seek under Rule 37(e)(2) are available "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e). The rule "does not apply when information is lost before a duty to preserve arises." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. And the Second Circuit has now held that a sanction under subdivision (e)(2) requires a finding, by a preponderance of the evidence, of "intent to deprive another party of the information's use in the litigation"; "[a] party's acting negligently or knowingly will not suffice." *Hoffer v. Tellone*, 128 F.4th 433, 436–38 (2d Cir. 2025).

Five of the six pharmacies whose records Plaintiffs call "gaping gaps" ceased operating between December 2023 and late 2024—more than a year before this action was filed and before any Levy Family Defendant could have anticipated it. Google's records concern one account at one pharmacy; Plaintiffs identify no deletion at the others. Their letter identifies months in which Plaintiffs' Rxeed data shows transactions and the pharmacies' own email accounts hold fewer. That is a coverage gap in the records of closed businesses, and the regulatory retention provisions Plaintiffs cite—21 U.S.C. § 360eee-1, 8 NYCRR § 63.6—describe a separate obligation whose breach, if any, is a matter for the regulator; they do not convert the absence of a record into a finding of intent to deprive a litigant of it. As to those fourteen defendants, Plaintiffs have not identified an act of spoliation at all.

Nor can the Fifth Amendment supply the missing finding. An adverse inference is permissible in a civil case, *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976), but in this Circuit it is one piece of evidence to be weighed against a record, not a substitute for one: the inference "may

be given significant weight," and the district court in *LiButti* was affirmed because it "did not rely solely upon the adverse inference" but "tested the persuasiveness of the adverse inference against other evidence." *LiButti v. United States*, 178 F.3d 114, 120 (2d Cir. 1999). The Court of Appeals said the same in a counterfeiting case: an invocation "will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 98 (2d Cir. 2012) (emphasis added; internal quotation marks omitted).

Plaintiffs' letter offers the invocations as the evidence. Under Rule 37(e)(2), the intent finding must be made; it cannot be inferred from a defendant's decision to exercise a constitutional right in a case in which Plaintiffs themselves plead that the conduct was criminal.

3. <u>As to Lumix and Ariel Levy, the matter is already before Judge Kaminsky, and default is not the measure the rule prescribes</u>.

The Levy Family Defendants recognize that Lumix stands differently. It was operating when the Seizure Order issued; it was the entity ordered to produce; its account was deleted within a week of the seizure, as Google's records now show; Judge Kaminsky has imposed sanctions and awarded Plaintiffs their fees; and Mr. Levy has invoked, in writing, on the question of how that came about. Counsel's efforts in June to restore access, disclosed to the Court at the time, could not have succeeded; Google's records explain why. Every one of those facts is before the Magistrate Judge, who has managed this discovery from the outset and who told the parties on June 23 that any dispositive-sanctions motion would be briefed on a full record. Rule 37(e)(2) contemplates a graduated response—an instruction that the lost information was unfavorable, or a presumption—before default, and this Circuit requires consideration of lesser sanctions before a case is ended for discovery misconduct. *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779–80 (2d Cir. 1999).

Plaintiffs' own authority shows how far this record is from one warranting default. In *Regulatory Fundamentals Group LLC v. Governance Risk Management Compliance, LLC*, No. 13 Civ. 2493 (KBF), 2014 U.S. Dist. LEXIS 107616 (S.D.N.Y. Aug. 5, 2014), the spoliator was a lawyer who, "on several occasions after a preservation obligation had attached," deleted relevant emails from his computer, twice took steps to terminate the hosting account that held the rest, and then, once the loss was discovered, "took steps to create a false record of mere negligence." *Id.* at *2–3. Judge Forrest reached a terminating sanction only after discovery, briefing and an evidentiary hearing at which she found, by clear and convincing evidence, serial spoliation, bad faith, and that the defendant had lied under oath. *Id.* at *11–12. Even then, the court began from the rule that "[a] court should always impose the least harsh sanction that can provide an adequate remedy," *id.* at *44 (internal quotation marks omitted), and considered monetary sanctions and an adverse inference before rejecting them on that record. *Id.* at *47–48. Judgment ran against the spoliator and the two entities he alone controlled, under the pre-2015 standard *Hoffer* has since held abrogated.

Nothing of that kind has been found, or could be found, as to fourteen defendants Plaintiffs do not accuse of deleting anything. Whatever measure is appropriate as to Lumix and Mr. Levy is for the Court to fix on that record, defendant by defendant.

4. <u>Plaintiffs are not without the evidence they need; they are without evidence of sources</u>.

Plaintiffs hold a complete transaction-level record of the pharmacies' Rxeed sales—5,011 line items, six pharmacies, twenty-five months—obtained from the marketplace itself, and they have reconciled it to the defendants' productions. They executed the seizure at Lumix, examined Mr. Levy's telephone, told the Court on June 23 that they had subpoenaed the provider for account and deletion metadata, Tr. 9:7–18, 10:5–10, and have now obtained it. What Plaintiffs say they lack is the identity of the pharmacies' suppliers. That is a legitimate interest, and the Levy Family Defendants do not disparage it, but it is an enforcement interest, not prejudice to the proof of a Lanham Act claim on which Plaintiffs already hold the sales record. A default judgment would not produce a single supplier name. It would produce a judgment.

5. <u>The dispute in this case is the measure of recovery, and it should be put before Judge Kaminsky for settlement</u>.

Whatever the ultimate merits, which the Levy Family Defendants continue to contest, the practical question in this action is the amount Plaintiffs may recover against assets the Court has already restrained: approximately $25.6 million in accounts and real property, against an accounting under 15 U.S.C. § 1117(a) that, on Plaintiffs' own sales figure and net of the marketplace commission shown on every order, is a fraction of that sum.

Accordingly, they respectfully request that the Court decline to schedule a pre-motion conference on case-terminating sanctions at this time and instead refer the parties to Magistrate Judge Kaminsky for a settlement conference; alternatively, that any sanctions motion be referred to the Magistrate Judge, be directed to the record as to each defendant separately, and be briefed on a schedule set after that conference. The Levy Family Defendants will continue to preserve all potentially relevant material and to supplement their productions as the counsel-supervised review concludes.

Of course, we rely on Your Honor's sound judgment and thank the Court for its consideration of this matter.

Respectfully,

Steve Zissou, Esq.

SZ/jc